967 F.2d 591
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Melvin Earl THEUS, Petitioner-Appellant,
v.
George DEEDS, Warden; Attorney General of the State of
Nevada, Respondents-Appellees.
 No. 91-16211.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 14, 1992.*
Decided June 15, 1992.
 
 Before FLETCHER, POOLE and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Melvin Earl Theus appeals the district court's denial of his petition for a writ of habeas corpus. We have jurisdiction pursuant to 28 U.S.C. § 2253 and we affirm.
 
 
 3
 * On November 24, 1982, a man accosted two women leaving a casino in Las Vegas. The man pushed the women to the ground and grabbed their purses. He then fled.
 
 
 4
 A few moments later, a police officer searching for the robber spotted a man who broke into a run and fled from sight. Other officers converged on the scene and discovered Theus hiding under a car. Police also found three rolls of nickels under the car.
 
 
 5
 The police arrested Theus. A jury found Theus not guilty of battery, but guilty of two counts of robbery of a person aged sixty-five or older. The trial judge sentenced Theus to four consecutive sentences of fifteen years under a Nevada statute doubling the maximum possible fifteen-year sentence for robbery when the victim is aged sixty-five or older. Theus's total sentence is sixty years.
 
 
 6
 Theus appealed the conviction, which was affirmed by the Nevada Supreme Court. He also filed several state post-conviction pleadings, but ultimately obtained no relief.
 
 
 7
 Theus filed a petition for writ of habeas corpus in the federal district court on July 11, 1990. A magistrate recommended dismissing the petition and the district court adopted that recommendation on July 10, 1991. Theus filed a timely notice of appeal. The district court declined to issue a certificate of probable cause for appeal, but this court issued such a certificate. We review de novo the district court's denial of a petition for a writ of habeas corpus. See Roehler v. Borg, 945 F.2d 303, 304 (9th Cir.1991).
 
 II
 
 8
 Theus contends that the evidence at his trial was insufficient to support the jury's finding of guilt. We may grant habeas relief on this ground only if we find "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979). We must review the evidence "in the light most favorable to the prosecution." Id.
 
 
 9
 Theus was convicted of robbing two victims over the age of 65. The evidence against Theus consisted primarily of the testimony of the two victims and the fact that Theus ran from police and hid under a car when they accosted him near the robbery scene.
 
 
 10
 The two victims testified that they were over the age of 65 on the evening of the robbery. Both also testified that a man pushed them to the ground and grabbed their purses.
 
 
 11
 Lillian Fecko, one of the victims, testified that as she and her friend Erma Boyd were walking from a casino to their hotel, she noticed a man glaring at them from a telephone booth. Fecko testified that she "looked him over real good." She said as she and Boyd were hurrying away, the man from the telephone booth grabbed their purses from behind.
 
 
 12
 Fecko said she described the man to police as having close cropped hair, a stubble beard, and wearing a dark jacket and dark pants. Fecko testified that while she was at the hospital for treatment of injuries she sustained during the robbery, the police brought in a suspect. She testified that the suspect, who turned out to be Theus, was the man who robbed her. She testified: "I was positive because I had gotten a good look at him and everything was fresh in my mind yet." She also identified Theus in court as the robber. She acknowledged, however, that she was unable to pick Theus out of a line-up four months after the robbery. During those four months, Theus had shaved his beard and no longer had his hair in cornrows.
 
 
 13
 Erma Boyd, the other victim, also testified that she identified Theus as the robber at the hospital.
 
 
 14
 Theus testified that while he was walking on a downtown street on the evening the robbery occurred, he ran when he saw a police car make a U-turn and head toward him. He testified that he ran because officers had harassed him before and he said he felt the officer in the car was coming to harass him in some way. The officer testified that he wanted to talk to Theus because he fit Fecko's description. About five minutes after the robbery was reported, and a few blocks from the robbery scene, the police found him hiding under a car.
 
 
 15
 Viewing this evidence in the light most favorable to the prosecution, we find that a reasonable jury could find Theus guilty beyond a reasonable doubt. The victims' testimony and Theus's action after the robbery provided a basis for the verdict. The jury was free to reject Theus's explanation for his conduct after the robbery. As the court explained in Roehler:
 
 
 16
 The jury had the opportunity to balance the witnesses' testimony and to determine their credibility after a full discussion in which the jurors' twelve minds could interact and the jurors could debate the issues involved.
 
 
 17
 We do not have the jurors' right to weigh the evidence.... The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached.
 
 
 18
 Roehler, 945 F.2d at 306. Accordingly, we reject Theus's claim that the evidence did not support the jury's finding of guilt.
 
 III
 
 19
 Theus claims that the procedure used when the victims identified him as their robber was unduly suggestive. "To determine whether an out-of-court identification procedure is so impermissibly suggestive as to taint subsequent identification testimony in deprivation of the defendant's due process rights, we examine the totality of the surrounding circumstances." United States v. Nash, 946 F.2d 679, 681 (9th Cir.1991).
 
 
 20
 Police brought Theus to the hospital less than an hour after the robbery, where both victims identified him independently. In United States v. Bagley, 772 F.2d 482, 492-93, (9th Cir.1985), cert. denied, 475 U.S. 1023 (1986), this court held that an identification procedure where FBI agents brought a suspect in handcuffs to a bank for a teller to identify about an hour and a half after a robbery was not unduly suggestive. Police used approximately the same procedure here. The procedure did not violate Theus's due process rights.
 
 IV
 
 21
 Theus contends that his second trial subjected him to double jeopardy because prosecutorial misconduct caused the mistrial at his first trial. At his first trial, the judge granted a mistrial upon Theus's motion after one of the victim's testimony suggested that she knew that the other victim had identified Theus as the robber.
 
 The testimony proceeded as follows:
 
 22
 Prosecutor: Now, during the period of time that you were together, was that in the emergency room area?
 
 
 23
 Witness: We were in the emergency room together.
 
 
 24
 Prosecutor: And then at some point you were separated.
 
 
 25
 Witness: Yeah.
 
 
 26
 Prosecutor: --Is that correct?
 
 
 27
 Witness: Yeah.
 
 
 28
 Prosecutor: Now, when the police officers brought in a suspect for you to view--
 
 
 29
 Witness: I was by myself.
 
 
 30
 Prosecutor: You were by yourself at that time?
 
 
 31
 Witness: Yeah.
 
 
 32
 Prosecutor: But was Mrs. Boyd in a position to see what you did?
 
 
 33
 Witness: No.
 
 
 34
 Prosecutor: And of course you don't know what she did?
 
 
 35
 Witness: No.
 
 
 36
 Defense Attorney: Objection. Leading.
 
 
 37
 The Court: Objection overruled.
 
 
 38
 Witness: Other than from what she told me after awhile.
 
 
 39
 Prosecutor: No, don't--
 
 
 40
 Defense Attorney: That answers it, your honor.
 
 
 41
 Prosecutor: We don't want you to go into what you were told.
 
 
 42
 Witness: Oh.
 
 
 43
 The court then granted a mistrial. "Where mistrial has been declared at the request of the defendant, the Double Jeopardy Clause is no bar to retrial unless the defendant can show that the 'conduct giving rise to the successful motion for mistrial was intended to provoke the defendant into moving for a mistrial.' " United States v. Lun, 944 F.2d 642, 644 (9th Cir.1991) (quoting Oregon v. Kennedy, 456 U.S. 667, 679 (1982)).
 
 
 44
 Theus claims the prosecutor in effect goaded him into moving for a mistrial because he hoped to have the second witness available to testify at the second trial. The record simply does not support such an assertion. The transcript shows that the witness volunteered the hearsay information without being prodded and that the prosecutor attempted to stop her. Theus has not shown that the prosecutor wanted to provoke a motion for mistrial.
 
 V
 
 45
 Theus claims he was denied effective assistance of counsel because his trial counsel waived his right to a speedy trial without his consent and his counsel failed to locate and use an alibi witness. In order to prevail on this claim, Theus must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." See Strickland v. Washington, 466 U.S. 668, 687 (1984). Because we find that these claims lack merit, we will not consider whether they were procedurally barred.
 
 
 46
 * Theus claims his counsel was ineffective because the counsel consented to a continuance in Theus's case that resulted in his not facing trial until approximately six months after the offense. Theus claims he was prejudiced because the delay allowed the state more time to produce witnesses.
 
 
 47
 Even if that amounted to ineffective assistance, Theus has not shown any prejudice caused by the delay. In fact, the court minutes show that Theus's lawyer requested a delay in the trial so that the court could conduct a hearing on a writ he had filed. The writ resulted in the court dismissing two counts.
 
 B
 
 48
 Theus also claims his counsel performed ineffectively because he did not locate or use a supposed alibi witness. Theus claims the witness could have corroborated his whereabouts on the night of the robbery.
 
 
 49
 Again, assuming such inaction by Theus's counsel amounted to ineffective assistance, Theus has failed to show prejudice. It is uncontradicted that Theus was apprehended moments after the robbery near the robbery scene. Theus did not claim in his testimony at trial that at the moment of the robbery, he was with anyone else. Therefore the witness could not provide an alibi for Theus. The transcript of an interview with the supposed alibi witness does not show how his testimony could possibly have helped Theus.
 
 C
 
 50
 Theus claims the district court should have granted an evidentiary hearing on his ineffective assistance of counsel claims because the claims turned on disputed questions of fact. The district court must hold an evidentiary hearing only if the factual allegations, if true, would entitle the petitioner to relief and the state trier of fact has not determined the facts after a full hearing. See Chaney v. Lewis, 801 F.2d 1191, 1193-94 (9th Cir.1986), cert. denied, 481 U.S. 1023 (1987).
 
 
 51
 Theus has not alleged facts that would entitle him to relief if shown to be true. Because Theus was not prejudiced, it was not necessary to review his factual allegations.
 
 VI
 
 52
 Theus claims his sixty-year sentence amounts to punishment disproportionate to his crime in violation of the Eighth Amendment. "The threshold determination in the eighth amendment proportionality analysis is whether [the] sentence was one of 'the rare case[s] in which a ... comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.' " United States v. Bland, No. 91-50148, slip op. at 2797 (9th Cir. March 20, 1992) (quoting Harmelin v. Michigan, 111 S.Ct. 2680, 2707 (1991) (Kennedy, J., concurring)).
 
 
 53
 There is no question that Theus was punished extremely severely. His offense, however, was a serious crime. The jury found that Theus forcefully stole the victims' purses. The record shows that they suffered serious injuries as a result of the robbery. One victim suffered a broken hip and a fractured shoulder. She required hip replacement surgery and spent approximately two months convalescing in a hospital. The other victim was treated at the hospital for her injuries and released several hours later. She testified that she was "in a state of shock and ill" for several months after the robbery.
 
 
 54
 Theus's crime was clearly a crime of violence. His victims were elderly. He was a repeat offender, having been convicted of robbery and attempted robbery. Given such facts, Theus's sentence of 60 years, while severe, is not grossly disproportionate to his crime.
 
 
 55
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3