UNITED STATES of America,
Plaintiff–Appellee,

v.

Kenneth M. CAUDLE, Defendant–
Appellant.

No. 93–30352.

United States Court of Appeals,
Ninth Circuit.

Submitted June 7, 1994.*

Decided Feb. 21, 1995.

James C. Bartlett, Hash, O'Brien & Bart-
lett, Kalispell, MT, for defendant-appellant.

Dennis J. Hester, Asst. U.S. Atty., Kalis-
pell, MT, for plaintiff-appellee.

Before: POOLE, BRUNETTI and
KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

This case involves the offenses of moving
survey markers and building a road on Na-
tional Forest land.

Caudle was hired by property owners to
cut timber on their ranch. The ranch was
surrounded by a national forest. At the
rancher's request, the government surveyed
the boundary and clearly marked it, to avoid
inadvertent trespass.

The government charged Caudle with
stealing trees, destroying a survey line, and
constructing a road on National Forest land.

---

* The panel unanimously finds this case suitable for
decision without oral argument.  Fed.R.App.P.
34(a) & 9th Cir.R. 34–4.

He went to trial before a magistrate judge, without a jury. The magistrate judge found a reasonable doubt about whether Caudle had taken the trees or someone else had, so he acquitted on that count, but convicted on the other two.

■ Caudle argues insufficiency of evidence on the boundary marks conviction. The statute reads:

§ 1858. Survey marks destroyed or removed

Whoever willfully destroys, defaces, changes, or removes to another place any section corner, quarter-section corner, or meander post, on any Government line of survey, or willfully cuts down any witness tree or any tree blazed to mark the line of a Government survey, or willfully defaces, changes, or removes any monument or bench mark of any Government survey, shall be fined not more than $250 or imprisoned not more than six months, or both.

18 U.S.C. § 1858 (1988).

Caudle argues that the orange fiberglass boundary signs on posts he moved were not, as a matter of law, any of the things which a person is prohibited from moving by this statute. His point is not frivolous, even though he plainly meant willfully to toss away the physical evidence of where the property line lay. The problem is that the statute does not speak of any boundary markers, just corners, meander posts, trees, monuments and bench marks. The record does not establish that the orange fiberglass markers were for corners, or stream meanders, or trees.

In ordinary discourse, "monument" and "bench mark" connote something more permanent than a fiberglass marker. While in the past, wooden posts were used to mark corners, modern practice is to set an iron post with identifying marks on a bronze cap, as a monument to mark a corner. Charles B. Breed and George L. Hosmer, *Principles and Practice of Surveying* 159 (10th ed. 1970). A "bench mark" is commonly a sighting point used to determine elevation. *Id.* at 293–95. The Bureau of Land Management defines "monument" consistently with the implication of greater permanence than a fiberglass boundary sign stuck into the ground:

A physical structure, such as an iron post, marked stone, or tree in place, which marks the location of a corner point established by a Cadastral Survey. Objects, to be ranked as monuments, should have certain physical properties such as visibility, durability, and stability, and they must define location without resorting to measurements. "Monument" and "corner" are not synonymous, although the two terms are often used largely in the same sense. See CORNER.

United States Department of the Interior, Bureau of Land Management, *Glossary of BLM Surveying and Mapping Terms* 35 (1978).

■ Not every movement of a lightly placed boundary marker is a crime under this statute.

The conviction was adequately supported, though, because the government presented evidence that a steel rebar pin with an aluminum cap, which had been put into the ground next to one of the orange fiberglass markers, was found buried next to the road under a pile of cut brush. Rebar is the kind of steel rod material typically used to reinforce concrete. The government also presented evidence that the marks on the ground showed Caudle had intentionally run his equipment over a corner to obscure it. That evidence allowed for the inference that Caudle had pulled up a steel corner monument, tossed it away from the corner it marked, and buried it under brush he cut while building his road. A steel pin with a cap is the sort of device which commonly is used as a "monument."

■ Caudle also argues insufficiency of the evidence on the road-building charge. One of the elements is that the road must be built "without a special-use authorization, contract, or approved operating plan." 36 C.F.R. § 261.10(a) (1993). The trier of fact could reasonably infer absence of authorization from the testimony that the boundary had been marked to avoid inadvertent trespass, and that the rancher told Caudle not to trespass on the Forest Service land.

Caudle also argues insufficiency on the basis that a man he hired built the road, not him. The magistrate did not have to believe his testimony to this effect, and it would not matter if he did. 18 U.S.C. § 2 (1988).

 Caudle also argues that the magistrate judge erred by admitting three prior convictions to impeach his credibility. They were for felonious theft, filing false claims, and perjury. They were all less than ten years old, so admissible under Federal Rule of Evidence 609(b). The perjury and false statement crimes were admissible under subsection 609(a)(2). *United States v. Leyva*, 659 F.2d 118, 121 (9th Cir.1981). Assuming without deciding that theft is not a crime of dishonesty, *see United States v. Cook*, 608 F.2d 1175, 1185, n. 9 (9th Cir.1979) (en banc), all the magistrate needed to do to admit this evidence was to balance probative value against unfair prejudice. Fed.R.Evid. 609(a)(1). There is no reason to suppose that the magistrate judge abused his discretion. The prejudice referred to is the danger that jurors will convict because they have discovered that it would be prudent to lock the defendant up, even if they are not sure he committed the crime charged. There is nothing in the record to suggest that the probative value of the theft conviction to the magistrate judge evaluating Caudle's credibility was outweighed by such prejudice, and it would be most surprising if such potential prejudice had any significance in a bench trial. *United States v. Portillo*, 699 F.2d 461, 464 (9th Cir.1982); Edward W. Cleary et al., *McCormick on Evidence* § 60 (3rd ed. 1984).

AFFIRMED.